# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MARILYN MACKENZIE,
    Plaintiff

vs                                            Case No. 1:09-cv-329
                                                             (Spiegel, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

## REPORT AND RECOMMENDATION

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on Plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in opposition (Doc. 10), plaintiff's Reply Brief (Doc. 11), the administrative record, and the record as a whole.

## PROCEDURAL BACKGROUND

      Plaintiff, Marilyn MacKenzie, was born on April 13, 1952, and was 56 years old at the time of the ALJ's decision. Plaintiff has a high school education, with three years of college courses. (Tr. 108). She has worked as a sales associate in a department store, as a newspaper writer and editor, as a secretary and as the manager of a gift store. (Tr. 93-100). Plaintiff filed applications for DIB and SSI in February, 2005, alleging disability beginning March 16, 2002, due to a knee injury, a back injury, loss of strength on her left side, and depression. (Tr. 66-68, 866-67; 102). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 43-45, 868-72). A hearing was held July 6, 2007, before Administrative Law Judge (ALJ) Ronald T. Jordan, who determined that Plaintiff was not disabled. (Tr. 16-28). The Appeals Counsel denied her request for review on March 10, 2009 (Tr. 4-6), and thus, the ALJ's decision became the Commissioner's final decision.

In determining that Plaintiff was not disabled, ALJ Jordan found that Plaintiff has the severe impairments of cervical degenerative disc disease and arthropathy, lumbar arthropathy and mild spondylosis, a history of degenerative joint disease of the left knee, status post arthroscopic surgery in 2002, and peripheral vascular disease, (Tr. 18), but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 21). ALJ Jordan determined Plaintiff's Residual Functional Capacity (RFC) as follows:

> The claimant is able to lift, carry, push, and pull 10 pounds occasionally and 5 pounds frequently. She can stand and walk for 2 hours of an 8 hour work day. She can sit for 6 hours of an 8 hour work day, but she must be afforded the opportunity to stand and stretch briefly every 20 to 30 minutes. She occasionally can balance, stoop, crouch, crawl, kneel, and climb stairs and ramps. She should not climb ladders, scaffolds, or ropes. Her capacity for work falls within the range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

(Tr. 22). ALJ Jordan then found that Plaintiff was capable of performing past relevant work as a secretary, an assistant bookkeeper, and newspaper editor. (Tr. 26). According to ALJ Jordan, this work does not require the performance of work-related activities precluded by her RFC. *Id.* ALJ Jordan concluded that Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 27).

## MEDICAL RECORD

In 1998, Plaintiff reported injuring her back while lifting a box. (Tr. 210). Due to complaints of pain in her lower back radiating down her leg, an MRI was taken, which revealed a midline small herniated disk at L4-5 with mild thecal sac compression and a small size herniated disc at L5-S1. (Tr. 211-12). Plaintiff was diagnosed with lumbar radiculopathy. (Tr. 215). She underwent steroid injections, with "almost complete resolution of pain . . ." *Id.* In March 1999, Plaintiff was allowed to return to "full duty without any restrictions." (Tr. 217).

In March 2002, Plaintiff hurt her knee while working. (Tr. 230). In April 2002, Plaintiff underwent arthroscopic surgery to have her meniscus repaired. (Tr. 476-78). She attended physical therapy until February 2003 (Tr. 234-420), with a "good even gait with and without Protonics tension." (Tr. 237, 247).

2

Plaintiff was seen in May 2003, due to complaints of lower back pain and weakness in her upper extremities. At that time, examination showed decreased strength in her left upper extremity. She experienced left-sided neck pain and shoulder pain when she raised her arms above her head. She had full strength in her right upper extremity and full grip strength in both upper extremities. She had no atrophy of her upper extremity muscles, and she had symmetrical sensation in both upper extremities. A cervical spine x-ray taken on May 13, 2003, showed spondylosis at C5-6 with disc space narrowing and osteoarthritic changes of the apophyseal joints. (Tr. 424-27).

In December 2003, state agency reviewing physician Kelvin Samaratunga, M.D., reported that Plaintiff could lift and/or carry and push and/or pull up to twenty pounds occasionally and ten pounds frequently, could stand and/or walk at least two hours in an eight-hour workday, could sit about six hours in an eight-hour workday, could frequently balance, and could occasionally climb, stoop, kneel, crouch and crawl. Dr. Samaratunga found Plaintiff's alleged limitation to be partially credible. (Tr. 428-35).

Plaintiff treated at the Family Practice Center at MidMichigan Medical Center for depression, stress, chest pains, wrist pain, joint pain, a nail infection and neck pain from December 2003 until November 2004. (Tr. 569-94). During this time, she was prescribed, Prozac, Naproxen Omeprazole, Darvocet, Pamelor, Lipitor and Lopressor. (Tr. 594). X-rays were taken of Plaintiff's right hand in March 2004 due to complaints of joint stiffness, which showed no significant arthritic changes, bone abnormalities or joint abnormalities. (Tr. 574, 588).

Examination by treating chiropractor, Nicole D. Edwards, D.C., in September 2004, revealed Plaintiff's cervical flexion and extension were mildly limited, and her lateral flexion and rotation were moderately limited. Dr. Edwards ordered a cervical x-ray, which showed narrowed disc spacing, anterior spurring, and right foraminal encroachment at the C6-7 level. (Tr. 605-08).

Plaintiff underwent a cardiac catheterization by Dr. Diehl on October 25, 2004. Plaintiff was believed to have significant peripheral vascular disease with a 70% to 80% occlusion of the right common femoral artery. (Tr. 557-58). Dr. Lee performed a lower abdominal aortography and runoff study on December 2, 2004 and observed only 20% to 30% occlusion of

3

the common femoral artery. He characterized that as "mild obstructive" or "nonobstructive" disease of the lower extremity arteriovascular system. Dr. Lee determined that the purported 70% to 80% stenosis of the right common femoral artery probably had been caused by spasm, basing his speculation on the runoff study of her left side, during which she had a spasm around the catheter. (Tr. 610-13).

Plaintiff treated with Leela Vrishabhendra, M.D., and other physicians at Group Health Associates from April 2005 through July 2007. Treatment notes reflect Plaintiff was treated for for routine health issues, abdominal pain, nausea/vomiting, shortness of breath, an injury to her right thumb, myalgia and myositis, depression, skin disorder and hyperlipidemia. (Tr. 741-817). In October and November 2005, Dr. Vrishabhendra requested that Plaintiff be given a handicapped parking placard because of an "[arthritic, neurological, or orthopedic condition that severely limits the ability to walk." (Tr. 811-12). On November 8, 2005, Dr. Vrishabhendra reported that she examined Plaintiff on November 4, 2005, and Plaintiff was unable to work on November 5, 2005 through November 6, 2005 due to illness, and was able to return to work without restriction on November 8, 2005. (Tr. 810). Dr. Vrishabhendra stated on December 1, 2005 that plaintiff had been unable to work on November 30, 2005 through December 2, 2005 because of an illness, but was able to return to work without restriction on December 3, 2005. (Tr. 809).

State agency consulting psychiatrist, Kevin Eggerman, M.D. reported in May 2005 that Plaintiff walked and sat without assistive devices or guarded behaviors. Dr. Eggerman noted Plaintiff's chief complaint was related to her physical symptoms. Dr. Eggerman also reported that Plaintiff had an average intellectual quotient and logical thought processes. She was able to perform calculations quickly and accurately, to recall 3 of 3 words after a 5 minute delay, to interpret proverbs and to abstract similarities. She showed no evidence of short term memory problems. Dr. Eggerman diagnosed Plaintiff with a depressive disorder of mild severity and in partial remission. He assigned Plaintiff a Global Assessment of Functioning (GAF) score of 60-65. Dr. Eggerman concluded that Plaintiff was not limited in her ability to understand, remember, and carry out short and simple instructions; was mildly limited in her ability to understand, remember, and carry out detailed instructions; was mildly limited in her ability to make

4

judgments on simple, work-related decisions; was mildly limited in her ability to interact appropriately with the public, supervisors, and co-workers; and was mildly limited in her ability to respond appropriately to work pressures and changes in a routine work setting. (Tr. 712-18).

In June 2005, state agency reviewing psychologist Tonnie Hoyle, Psy.D., concluded that Plaintiff's mental impairments were not severe. According to Dr. Hoyle, Plaintiff's statements were only partially credible. (Tr. 727-40). In August 2005, state agency psychologist Jennifer Swain, Psy.D., affirmed Dr. Hoyle's assessment. (Tr. 727).

Paul Morton, M.D., a state agency reviewing physician opined in June 2005, that Plaintiff could lift and/or carry and push and/or pull up to twenty pounds occasionally and ten pounds frequently; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could frequently balance, climb ramps/stairs, stoop, kneel, crouch, and crawl; and could occasionally climb ladders, rope, or scaffolds. Dr. Morton further opined that Plaintiff's allegations were only partially credible, noting that Plaintiff reported chronic pain, although her range of motion was normal, and her muscle strength was intact. (Tr. 719-26). Maria Congbalay, M.D., another state agency reviewing physician affirmed Dr. Morton's opinion in August 2005. (Tr. 726).

In July 2007, Dr. Vrishabhendra received a letter from Plaintiff's attorney, asking Dr. Vrishabhendra to provide a copy of Plaintiff's medical records, and to complete a form regarding her physical abilities. Dr. Vrishabhendra provided the records, but said she could not complete the form and advised plaintiff to "see a rheumatologist for evaluation." (Tr. 741).

Plaintiff treated with chiropractor, Charlene Bach, D.C. from June 2005 through July 2007, mainly for adjustments in the cervical and thoracic spine areas. (Tr. 839-54). In August 2005, Dr. Bach reported that Plaintiff had chronic fibromyalgia, muscle weakness in the cervical and thoracic spine areas and limited neck range of motion. Dr. Back also reported that Plaintiff would experience significant pain and spasms if she sat or stood for longer than thirty minutes at a time, and that she could use her extremities for functional tasks, although she would experience pain, spasms, and weakness in her arms with repeated use. (Tr. 711).

Plaintiff treated with Rodney E. Vivian, M.D. a psychiatrist and a licensed clinical professional counselor, in his office once a month from April 2006 through June 2007.

5

Plaintiff's sessions dealt with money issues, her application for disability, depression, and physical problems. (Tr. 826-37).

Dr. Bach completed a fibromyalgia medical source statement in July 2007. She opined that plaintiff met the American College of Rheumatology criteria for fibromyalgia. Dr. Bach listed other symptoms of fatigue, stiffness and swelling, and numbness and tingling. According to Dr. Bach, Plaintiff could sit for fifteen minutes or less at a time; stand ten minutes or less at a time; sit less than two hours total in an eight-hour workday; stand/walk less than two hours total in an eight-hour workday; never lift any weight; never twist, stoop, crouch, or climb; never look down; occasionally look up; occasionally look left or right; and never hold her head in a static position. Dr. Bach also reported that plaintiff would need 2-4 breaks or more, of 10-20 minutes each, in a workday, and that she needed to be able to switch between standing and sitting at will. She noted sixteen tender points on Plaintiff's body, and identified elevated sedimentary rates "suggestive of inflammation," positive x-rays for degeneration and arthritis, and MRIs for facet joint dysfunction as clinical findings that confirmed the presence of fibromyalgia. (Tr. 818-23).

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified at the administrative hearing that she stopped working in 2004. She was in a twelve week training program and missed a number of days, so she was terminated. (Tr. 882). She took muscle relaxers and pain pills for her fibromyalgia, but she had not been prescribed any physical therapy or home exercises. (Tr. 883). She was originally diagnosed with fibromyalgia in Michigan by a rheumatologist, but she has not seen one in Ohio. (Tr. 884). She occasionally wore a brace for her knee. *Id.* She does drive, but "not far." (Tr. 885). Plaintiff further testified that she had back surgery in 1997, and since that time her back has "never been right." (Tr. 886). Her back and her knee hurt everyday. (Tr. 888-89).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical question to the vocational expert (VE) assumed an individual who has the residual functional capacity to perform work at the sedentary level; needed to stand and stretch every 20 to 30 minutes; could only occasionally stoop, crouch, crawl, kneel, balance, and climb stairs or ramps; and could not climb ladders, scaffolds or ropes. (Tr. 898-99). The VE responded that the Plaintiff could perform her past relevant work as a secretary, assistant bookkeeper, and newspaper editorial writer. (Tr. 899).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389,401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1),423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is

7

dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix I. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley* v. *Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk* v. *Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied, 461* U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520 ( C). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation.

8

Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir. 1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,* No. 876189, slip op. at 4 (6th Cir. Oct. 28, 1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,* 773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born* v. *Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch* v. *Richardson,* 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon* v. *Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson* v. *Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole* v. *Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs."

9

*Richardson* v. *Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner* v. *Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk* v. *Secretary of H.H.S.*, 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips* v. *Harris*, 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway* v. *Secretary of H.H.S.*, 823 F.2d 922, 927-28. (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky* v. *Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley* v. *Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Nos* v. *Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical

signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. §§ 404.1520a and 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R. §§ 404.1520a(b)(2) and 416.920a(b)(2). Plaintiffs level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); *see Hogg v. Sullivan,* 987 F.2d 328,332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4);

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. §§ 404.1520(c)-(f) and 416.920a(c)-(f).

The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the Administrative Law Judge when cases are decided at

an administrative hearing. *Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted). [20 C.F.R. § 404.1546; § 404.1527(e)(2)].

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.,* 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.,* 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require ... 'objective evidence of the pain itself.'" *Duncan,* 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky,* 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler,* 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky,* 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky, 35* F.3d at 1036. The ALJ's articulation of reasons for

crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

## OPINION

Plaintiff assigns five errors in this case. Plaintiff contends that the ALJ's RFC determination, that she could perform sedentary work with certain limitations, is not supported by substantial evidence in the record. Plaintiff contends the limitations based on her fibromyalgia and depression/anxiety would limit her to unskilled, sedentary work and therefore she would be found disabled under Grid Rule 201.14 and upon reaching the age of 55, she would be found disabled under Grid Rule 201.06.

Plaintiff next contends the ALJ erred by giving more weight to the opinion of Drs. Morton and Congbalay, non-examining state agency physicians, than to the assessment of treating chiropractor, Dr. Bach and treating internist, Dr. Vrishabhendra. Plaintiff's fourth argument is that the ALJ failed to consider Plaintiff's complaints of pain in assessing her credibility. Finally, plaintiff contends the ALJ relied on an improper hypothetical to the VE in determining that Plaintiff was not disabled.

The Regulations direct the Commissioner to assess a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. §§ 404.1545(a) & 416.945(a). If the applicant can still perform the kind of work he or she performed in the past, he or she is deemed not disabled. *Id.* at §§ 404.1520(e) & 416.920(e). In determining RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments, even those not deemed severe. *Id.* at §§ 404.1545(a)(3) & 416.945(a)(3).

Here, the ALJ found that plaintiff had the RFC to perform sedentary work. She is able to lift, carry, push, and pull 10 pounds occasionally and 5 pounds frequently. She can stand and walk for 2 hours in an 8- hour work day. She can sit for 6 hours of in 8- hour work day, but she

13

must be afforded the opportunity to stand and stretch briefly every 20 to 30 minutes. She occasionally can balance, stoop, crouch, crawl, kneel, and climb stairs and ramps. She should not climb ladders, scaffolds, or ropes. (Tr. 22). In making this determination, the ALJ gave substantial weight to the opinions of the state agency reviewing physicians, Drs. Morton and Congbalay, and accorded little weight to the opinions of treating chiropractor, Dr. Bach and treating internist, Dr. Vrishabhendra. (Tr. 24-26).

The Regulations require an ALJ to give "controlling weight" to the opinion of a treating physician on the issue of the nature and severity of a claimant's impairment if that opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); *See also Blakley v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544, (6th Cir. 2004).

In July 2007, Dr. Bach provided an opinion that Plaintiff met the American College of Rheumatology criteria for fibromyalgia and had widespread pain on both sides of her body and above and below the waist. Dr. Bach identified 18/18 fibromyalgia tender points that Plaintiff had exhibited. (Tr. 818-23). When asked to identify the clinical findings supporting the diagnosis of fibromyalgia, Dr. Bach cited an elevated sedimentation rate, which suggested inflammation, X-rays of degenerative arthritis, and an MRI that showed facet joint dysfunction. (Tr. 819). The ALJ found those findings were supportive of Plaintiff's other musculoskeletal impairments, rather than of fibromyalgia. (Tr. 25).

As noted above, Dr. Bach opined that Plaintiff could sit for less than 2 hours of an 8 hour work day and could stand and walk, in combination, for less than 2 hours of an 8-hour work day. Dr. Bach estimated that plaintiff could sit for 15 minutes continuously, stand for 10 minutes continuously and walk ½ block. Dr. Bach stated that the claimant should walk around every 15 minutes for about 5 minutes each time, and she opined that the claimant needed a job that permitted her to shift positions at will from sitting, standing, or walking. (Tr. 822-23).

Dr. Bach, as a chiropractor is not an acceptable source of medical evidence. 20 C.F.R. §§404.1513; 416.913. The Commissioner is not required to give controlling weight to a

14

chiropractor's opinion, nor is he required to adopt a chiropractor's opinion. *Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997); *Lucido v. Commissioner of Social Security,* No. 03-3713, 2005 WL 221528 at * 2 (6th Cir. Jan. 31, 2005).

SSR 06-03p, 2006 WL 2329939, essentially provides that while the factors set forth in 20 C.F.R. §§ 404.1427(d) and 416.927(d) apply only to evaluating medical opinions from acceptable medical sources, the same factors can be applied to opinion evidence from other sources.

In this case, the ALJ noted that while Dr. Bach was not an "acceptable" medical source, she is a medical source and he considered her opinion. (Tr. 25). The ALJ did not give Dr. Bach's assessment weight because her diagnosis of fibromyalgia was not based on clinical evidence. *Id.* Dr. Bach stated that is has a positive sedimentation rate, but no such test is referred to in her treating records or appears in the other medical evidence of record. *Id.* Dr. Bach reported that Plaintiff was found to have 18/18 positive trigger points, but such a report does not appear in her treatment records. *Id.* The ALJ further noted that Plaintiff complained of pain in only 4 points of her body. *See* Tr. 857.

Plaintiff also argues that the ALJ erred in assessing the limitations of Dr. Vrishabhendra from October and November 2005. Dr. Vrishabhendra requested that Plaintiff be given a handicapped parking placard because of an "[arthritic, neurological, or orthopedic condition that severely limits the ability to walk." (Tr. 811-12). The "limitations" of Dr. Vrishabhendra is simply a treatment note prescribing a handicapped parking placard. *Id.* In discussing Dr. Vrishabhendra, the ALJ noted that

> [T]he doctor also stated on November 8, 2005 that the claimant had been examined on November 4, 2005, was unable to work on November 5, 2005 through November 6, 2005 due to illness, and was able to return to work without restriction on November 8, 2005. (Ex. 22F at 70). Similarly, Dr. Vrishabhendra stated on December 1, 2005 that the claimant had been unable to work on November 30, 2005 through December 2, 2005 because of an illness but was able to return to work without restriction on December 3,2005. (Ex. 22F at 69). As the doctor's own treatment records do not show objective evidence of a limitation in the claimant's ability to walk (see generally Ex. 22F), and the medical records are lacking in other support for that opinion, I have not given the opinion any weight.

15

(Tr. 25-26). In fact, in July 2007, Dr. Vrishabhendra received a letter from Plaintiff's attorney, asking Dr. Vrishabhendra to provide a copy of Plaintiff's medical records, and to complete a form regarding her physical abilities. Dr. Vrishabhendra provided the records, but said she could not complete the form, and advised Plaintiff to "see a rheumatologist for evaluation." (Tr. 741).

The ALJ based his physical RFC determination on the 2005 recommendations of the non-examining medical consultants of the Bureau of Disability Determination, Drs. Morton and Congbalay. (Tr. 26). The ALJ found that these assessments were entitled to considerable deference as they were consistent with the medical findings of record and were not rebutted by other substantial evidence. *Id.*

Although Plaintiff argues her depression and anxiety eroded the RFC determination, there is no evidence in the record to substantiate her claims. Drs. Eggerman, Hoyle, and Swain found that Plaintiff was not limited in her ability to understand, remember, and carry out short and simple instructions, and was mildly limited in her ability to understand, remember, and carry out detailed instructions. (Tr. 715-17, 739). Furthermore, even though the physicians at the Family Practice Center at MidMichigan Medical Center treated Plaintiff for depression and stress and prescribed Prozac, they are family physicians and not psychologists nor psychiatrists. *See generally* Tr. 569-94. Moreover, Dr. Eggerman, the consultive psychiatrist, found mild symptoms and assigned Plaintiff a GAF score (60 to 65). (Tr. 712-18). Thus, her alleged mental impairment would not have eroded her ability to perform work.

Accordingly, the undersigned finds that the RFC, as determined by the ALJ, is supported by substantial evidence. Although the RFC selected by the ALJ might not be the same RFC that Plaintiff would have selected, the ALJ clearly explained his rationale, and the RFC is, without question, within the permissible "zone of choice" which the Sixth Circuit discussed in *Felisky, supra. See also, Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)("there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."); *see also Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). The ALJ's RFC is thus not subject to reversal.

Plaintiff further argues that the ALJ erred by not finding her limited to unskilled, sedentary work at age fifty and, in turn, by not finding her to be disabled pursuant to Grid Rule 201.14, Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2 or Grid Rule 201.06 upon reaching age 55. This argument lacks merit because the ALJ's assessment of Plaintiff's residual functional capacity, at the limited range of sedentary work, was supported by substantial evidence, particularly the opinions of Drs. Morton and Congbalay. As a result, the ALJ was not required to apply Grid Rule 201.14 since it applies only to those age fifty who can only perform unskilled, sedentary work. *See Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) (claimant's characteristics must exactly match the criteria in Grid Rules to trigger a disability finding).

Plaintiff asserts in her next error that the ALJ's credibility findings are not supported by the record. Contrary to Plaintiff's contentions, substantial evidence supports the ALJ's credibility determination.

In his decision, the ALJ stated that Plaintiff's testimony concerning her symptoms and limitations were not entirely credible. (Tr. 25-26). In making this determination, the ALJ cited to medical evidence establishing that the existence of Plaintiff's medical impairments did not equate to the severity of her conditions as described by her. (Tr. 19-21). The ALJ discussed Plaintiff's claim that she had difficulty performing activities of daily living such as cleaning, shopping, cooking, and laundry. *Id.* However, The ALJ supports his conclusion with two pages of examples of inconsistencies in Plaintiff's testimony and additional evidence. As the Commissioner noted, the ALJ discounted, but did not completely disregard, Plaintiff's statements about her pain and symptoms. He gave her some "benefit of the doubt" and restricted Plaintiff to sedentary work, rather than the light work Dr. Congbalay had concluded Plaintiff was capable of performing. *See* Doc. 10 at 13. The ALJ noted throughout his decision that Plaintiff made statements regarding her ability to maintain her hygiene and personal appearance, shop, do household chores, and drive and go places independently; and statements about having friends and regularly attending church. *See* Tr. 20-21, 26, referencing Tr. 171-73, 715-39.

The ALJ further reviewed and discussed Plaintiff's alleged precipitating and aggravating factors, the improvements she felt from taking her medications, the treatment she received, as

17

well as the fact that she used to rest before completing certain activities. (Tr. 23-25). Given this substantial evidence, the ALJ's credibility determination may not be overturned. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). ("ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). The ALJ found some of Plaintiff's subjective allegations to be credible, and the credible portions are reflected in the residual functional capacity assessment.

Finally, Plaintiff claims that because the ALJ erred in making his RFC determination, the VE's testimony was flawed as it was based upon an improper hypothetical. This contention lacks merit because Plaintiff has not shown that the ALJ's assessment of her RFC was based on legal error or unsupported by substantial evidence. As a result, the VE's testimony, addressing a hypothetical person with these limitations and abilities, which incorporated the ALJ's residual functional capacity, *see* Tr. 894-902, constituted substantial evidence to support the ALJ's conclusion at step 5 of the sequential analysis. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (citing *Varley v. Sec. of Health & Human Svcs.*, 820 F.2d 777, 779 (6th Cir.1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert....")).

## CONCLUSION

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

Because substantial evidence supports the decision of the ALJ, the Court recommends that his decision be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

DATE 9/21/10

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).